[Cite as *Crow v. Baughman*, 2011-Ohio-1170.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

BRANDON CROW,

    PLAINTIFF-APPELLEE,                CASE NO.  5-10-28

    v.

BRANDI BAUGHMAN,                 O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court,
Juvenile Division
Trial Court No. 20940224

Judgment Affirmed

Date of Decision:   March 14, 2011

APPEARANCES:

    *Howard A. Elliott*  for Appellant

    *Donald J. Rasmussen*  for Appellee

**SHAW, J.**

{¶1} Defendant-Appellant, Brandi Baughman ("Brandi"), appeals the judgment of the Hancock County Court of Common Pleas, Juvenile Division, overruling her objections to the magistrate's decision designating Plaintiff-Appellee, Brandon Crow ("Brandon"), the residential parent and legal custodian of their child, establishing visitation for Brandi, and ordering her to pay child support. The trial court subsequently adopted and incorporated the magistrate's decision in its August 30, 2010 Judgment Entry.

{¶2} The parties' child, Liberty, was born in May of 2009. On June 23, 2009, Brandon filed a complaint requesting to be designated residential parent or, in the alternative, to establish a shared parenting plan and to resolve other support matters. On July 7, 2009, Brandon filed a motion requesting the trial court to establish temporary visitation and companionship rights. In his motion, Brandon alleged that Brandi refused to allow him to exercise their agreed upon visitation and companionship, which they had established prior to the filing of his complaint. On September 1, 2009, the magistrate granted Brandon's motion for temporary visitation and established a temporary visitation schedule. The schedule gave Brandon visitation with Liberty on Tuesdays and Thursdays during the day and on alternating weekends. The magistrate also ordered a Court Appointed Special Advocate to be appointed to serve as the Guardian Ad Litem ("GAL") for Liberty throughout the pendency of the custody case.

{¶3} On October 30, 2009, Brandon filed a motion for contempt of court alleging that Brandi denied him visitation with Liberty on a weekend allocated to him by the temporary orders. On November 19, 2009, the trial court appointed CASA Stephanie Stephan as the GAL in the case. On November 24, 2009, the parties appeared before the magistrate along with the GAL. The magistrate ordered that Brandi furnish Liberty's social security number to Brandon so that he could obtain medical insurance for her through his employment. The magistrate also established a temporary holiday schedule for Thanksgiving and Christmas.

{¶4} On February 17, 2010, the parties and the GAL appeared before the magistrate for a pre-trial hearing. The magistrate found that the GAL had concerns regarding the "rearing of this child." (Order, Feb. 17, 2010). Based on the GAL's temporary recommendation, the magistrate ordered Brandon's visitation to be expanded to include overnight visits every Thursday, and that Brandon shall keep Liberty until 7:00 p.m. on Sundays during his scheduled weekends. The magistrate also ordered Brandon to have extended visitation with Liberty over Easter.

{¶5} On March 30, 2010, the GAL filed her report and final recommendations with the court. In the report, the GAL recommended that Brandon be named the residential parent and legal custodian of Liberty and that Brandi be given visitation. On April 8, 2010, the parties appeared before the magistrate for the final hearing. Brandon appeared with counsel and Brandi appeared *pro se*. The GAL Stephanie Stephan was

also present.  At the hearing, Brandon withdrew both his motion for shared parenting and his motion to find Brandi guilty of contempt.  Both parties and the GAL testified, as well as family members and friends of each party.  On April 12, 2010, the magistrate issued her decision finding that it is in their child's best interest to designate Brandon the residential parent and legal custodian.  The magistrate noted that she considered each of the "best interest" factors listed in R.C. 3109.04(F)(1).  The magistrate specifically stated the following in her decision:

> **As stated above, each parent appears to be equally qualified to care for Liberty with one exception.  Specifically, the Court must consider R.C. 3109.04(F)(1)(f) which states: In determining the best interests of a child, the court shall consider the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights.  Several witnesses testified as to [Brandi's] unwillingness to openly cooperate with visitation.  In reaching this decision, the Magistrate relied on the testimony and report of the GAL and her independent investigation revealing that visitation was hampered greatly by the actions of [Brandi].  Moreover, the testimony and investigation revealed that [Brandon] did not have such issues and would be willing to permit and facilitate [Brandi's] visitation with the child.  Based upon the foregoing, the Magistrate concludes that if this child is to have a normal, healthy relationship with both of her parents, then placement with her father is in her best interests.**

(Decision, Apr. 12, 2010).

{¶6} In accordance with the magistrate's decision, Brandon was named residential parent and Brandi was given visitation.  The order also provided for a more liberal visitation schedule as the parties agree.  However, in the event that the parties could not

reach an understanding on visitation, Brandi would be given visitation in accordance with the local rules. Brandi was also ordered to pay child support.

{¶7} Brandi retained counsel and subsequently filed objections to the magistrate's decision, which were overruled by the trial court. On August 30, 2010, the trial court adopted and incorporated the magistrate's April 12, 2010 Decision and journalized the decision as an order in its Judgment Entry. It is from this Judgment Entry that Brandi now appeals, asserting the following assignment of error.

## ASSIGNMENT OF ERROR

**IN ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES AND NAMING APPELLEE-FATHER OF THE MINOR CHILD AS THE RESIDENTIAL PARENT, THE TRIAL COURT ABUSED IT'S *[SIC]* DISCRETION IN THAT IT FAILED TO CONSIDER ALL RELEVANT FACTORS AS MANDATED BY ORC § 3109.04(F), AND ACCORDINGLY, THE DECISION OF THE TRIAL COURT MUST BE REVERSED.**

{¶8} In her sole assignment of error, Brandi argues that the trial court erred in adopting the magistrate's decision because the magistrate failed to consider all the statutory factors when she concluded that naming Brandon the residential parent would be in their child's best interest. Specifically, Brandi maintains that the magistrate only focused on one of these statutory factors and based her decision exclusively on that factor.

{¶9} Custody determinations are some of the most difficult and agonizing decisions a trial court must make, therefore, a trial court must have wide latitude in its

consideration of the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. When reviewing a ruling pertaining to the allocation of parental rights, the trial court is to be afforded great deference. *Id.* Thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence absent an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, syllabus, 550 N.E.2d 178. The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. *Davis*, 77 Ohio St.3d at 418.

{¶10} Initially, we note that there is no presumption that either the mother or the father should become the residential parent; the parents stand on equal footing regarding the final allocation of parental rights and responsibilities. R.C. 3109.03; *Bechtol*, *supra*, at 24, 550 N.E.2d 178. In allocating custody, the trial court must determine what is in the "best interest" of the child. See R.C. 3109.04(B). To make this determination, the trial court must consider all relevant factors, including, but not limited to the statutory factors listed in R.C. 3109.04(F)(1), which provide as follows:

**(a) The wishes of the child's parents regarding the child's care;**

**(b) If the court has interviewed the child in chambers .*.*.* regarding the wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d)   The child's adjustment to the child's home, school, and community;**

**(e)   The mental and physical health of all persons involved in the situation;**

**(f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;**

**(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

R.C. 3109.04(F)(1).

{¶11} We acknowledge that Brandi's primary contention with the magistrate's decision is that the magistrate specifically focused on only one factor in deciding to name Brandon the residential parent and legal custodian of their child. However, we note that even though R.C. 3109.04(F) provides a list of factors for the trial court to consider in determining the best interest of the child, there is no requirement that the trial court set

out an analysis of each factor in its judgment entry, so long as the judgment entry is supported by a substantial amount of competent, credible evidence that the best interest of the child was considered. *Bunten v. Bunten* (1998), 126 Ohio App.3d 443, 447, citing *Masitto v. Masitto* (1986), 22 Ohio St.3d 63.

{¶12} Contrary to Brandi's contention on appeal, the magistrate specifically stated that she "reviewed the 'best interest' factors specified in R.C. 3109.04 for a determination of residential parent." (Decision, Apr. 12, 2010, p.3). The factor specifically discussed in the magistrate's decision pertained to the consideration of the parent more likely to honor and facilitate court-approved parenting time or visitation rights. R.C. 3109.04(F)(1)(f). In focusing on this particular factor, the magistrate acknowledged that "each party is a competent, attentive and capable parent to Liberty. Both parents have suitable homes, are capable of providing food and genuinely care and love their child." (Decision, Apr. 12, 2010, p.2) However, based on the evidence adduced from the testimony at the final hearing, it became evident to the magistrate that Brandon would be the parent more likely to honor and facilitate court-approved parenting time and visitation.

{¶13} Our review of the record reveals several instances which support the magistrate's conclusion on this point. Shortly after Liberty was born, Brandon initiated these proceedings to be named residential parent, or in the alternative, to establish a shared parenting plan. Within the matter of weeks, Brandon filed a motion to establish

temporary visitation alleging that Brandi was preventing him from having visitation with their child as the parties previously agreed. Testimony at the hearing revealed that Brandi was cooperative with facilitating Brandon's visitation so long as she was in control when it took place. However, after court proceedings were initiated, Brandi was less inclined to cooperate with Brandon.

{¶14} In addition, after temporary visitation orders were in place, Brandi violated the temporary orders when she took Liberty out of town on Brandon's scheduled weekend and denied him visitation. Several months later, Brandi eventually agreed to permit Brandon to make-up that weekend. However, there was testimony suggesting that Brandi only did so because she was under scrutiny as a result of these proceedings. To the contrary, Brandon had never denied Brandi visitation and testified that he would facilitate Brandi's visitation in the future.

{¶15} It is evident from the testimony that both Brandon and Brandi are good, loving parents, who are both capable of adequately caring for Liberty. However, every witness at the final hearing testified to the substantial amount of tension that remained between the parties, which strained their ability to communicate effectively with one another.

{¶16} In particular, the GAL testified that Brandi was very resistant to communicating with Brandon and letting him be involved in making decisions about Liberty's medical care. Specifically, the testimony revealed that despite being court-

ordered, Brandi refused to give Brandon access to Liberty's medical records, which were password-protected. The GAL testified that she spoke with Brandi and explained that she needed to provide Brandon access to those records. After that conversation, Brandi removed the password restraint. However, Brandi arranged for the doctor's office to call her immediately anytime Brandon schedules an appointment for their child.

{¶17} The GAL stated that she explained to both parties on numerous occasions that they needed to put their differences aside and communicate with one another because it is in the best interest of their child. According to the testimony at the hearing, Brandon made several attempts to establish communication with Brandi. The GAL noted that in several meetings with the parties, Brandi refused to make eye-contact with Brandon, and was resistant to any type of communication with Brandon. The record demonstrates that eventually Brandi would only communicate with Brandon by writing him notes, which were delivered at the custody exchanges. It is based on these observations that the GAL recommended that Brandon be named the residential parent.

{¶18} On appeal, Brandi argues that the magistrate failed to consider other important best interest factors such as the fact that Liberty has been living in Brandi's household with her two other children from a prior relationship, and that Brandi has been the primary caretaker of Liberty for since her birth in May of 2009. As noted above, the magistrate's decision indicated that she considered these factors and gave weight to them. The magistrate noted that both parties were equally qualified to care for Liberty with the

exception of one factor. It was Brandi's blatant unwillingness to cooperate and communicate with Brandon that tipped the scales in Brandon's favor. Brandi's resistance to facilitating Brandon's visitation with Liberty was not only attested to by many witnesses, but the GAL also documented several instances throughout the proceedings where Brandi repeatedly demonstrated her obstinance in allowing Brandon to have equal access to their child. The magistrate explicitly stated she "relied on the testimony and report of the GAL and her independent investigation revealing that [Brandon's] visitation was hampered greatly" by Brandi's actions. (Decision Apr. 12, 2010, p.3).

{¶19} Accordingly, after reviewing the record before us, we find that the magistrate's determination that it is in Liberty's best interest to designate Brandon as the residential parent and legal custodian was supported by a substantial amount of competent, credible evidence. Therefore, we cannot find that the trial court abused its discretion in affirming the magistrate's decision.

{¶20} Brandi's sole assignment of error is overruled.

{¶21} Based on the foregoing, the judgment of the Hancock County Juvenile Court is affirmed.

***Judgment Affirmed***

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**